## Lockhart Estate

*C. Leo Sutton,* for exceptant.
*Mercer D. Tate,* contra.

SHOYER, J., April 16, 1962.—In Lockhart's Estate, 306 Pa. 394, where this same will was under consideration, our Supreme Court[1] upheld the trusts as to two-thirds of the income for the lives of Wilmer Gardner Crowell and his son, William. Our court was thereupon directed to modify its decree (15 D. & C. 594) that by reason of the perpetual gift of income to the issue of Wilmer the rule against perpetuities had been violated, and, since the gifts to Wilmer and his son, William, were inextricably connected with these invalid gifts, their trusts also must fail. As part of its decree our court had then, as a matter of course, considered the gifts in remainder and concluded they too were void.

The Supreme Court deferred final decision of the appeal of the remainderman, Philadelphia Churches of Christ Scientist, as follows (p. 406) : "With respect to the ultimate disposition of the principal and the gifts to the two charities named in the will, we follow the ruling made when the case was here before (see Lockhart's Estate, 267 Pa. 390), and will not now determine who are entitled to the principal when the life estates cease. See also Sharples's Estate, 305 Pa. 12. When they are ended, that matter can be adjudicated."

Thereafter, Wilmer died on August 23, 1943, and the death of his son, William, on May 20, 1961, again brings this will before our court for construction.

All parties agree that the trust has fully terminated.[2] The Tilden Home for Aged Couples of the

---

[1] In preparing to construe this will for the second time the Supreme Court observed (p. 400) : "It has been said that no will has a brother. It is doubtful whether this one has even more distant relatives. . . ."

[2] We approve this construction although Robert H. Crowell, a second son of Wilmer and a brother of William, was born in testatrix' lifetime and still survives. He was not expressly named as a

City of Philadelphia (formerly The Home for Aged Couples) now claims its legacy of $5,000 under the following provisions of the will:

"In the event of the decease of Wilmer Gardner Crowell, and his lawful issue, then in such a case, the said trust is to cease, and absolutely determine.

"It is my wish, and desire, and I so order, and direct, subject to the conditions and provisions heretofore mentioned, and set forth, That out of the principal of my said trust estate, I give, devise and bequeath, to The Home for Aged Couples, Corner Francis & Brown Streets in the City of Philadelphia, if the said Home is in existence, the sum of five thousand dollars, and if said Home is not in existence, then in such a case, the said five thousand dollars, and the whole principal of said trust estate, is to go towards the erection and construction of a new Christian Science Church, in the City of Philadelphia, wherever it is most needed."

Counsel for the Home contends that the gift to the Home is vested because Wilmer and his issue were given income only, with no right to invade principal. He also argues that the bequest is valid by virtue of section 15(c) of the Wills Act of June 7, 1917, P. L. 403, which provides that where a gift contained in residue "shall fail or be void . . . by reason of such . . . bequest being contrary to the law, or otherwise incapable of taking effect . . . it shall pass to and be divided among the other residuary . . . legatees, if any there be, in proportion to their respective interests in such residue."

---

life tenant in the will and, hence, was not a "life in being" within the meaning of the rule against perpetuities. His interest has already been construed by our Supreme Court to fall within testatrix' reference to the "lawful issue" of Wilmer Gardner Crowell, an intestacy, and during the life estates of his father and brother he has received income as an intestate heir. See 306 Pa., at p. 404.

The Christian Science Church, though notified of the current audit, did not appear. Obviously their gift in remainder was contingent, inter alia, upon the Home's no longer being "in existence" and, as stated by the learned auditing judge, this "contingency has utterly failed." [3] The Home has filed the present exceptions to the awards by the auditing judge which gave the remainder to the intestate heirs of the testatrix.

We can find no greater merit in the claim of the Home than of the church. The gift of principal to the Home is limited to take effect upon the "dubious and uncertain event" of the line of Wilmer Gardner Crowell becoming extinct; it is clearly a contingent remainder: Penrose's Estate, 257 Pa. 231, 233. Further, testatrix "ordered and directed" that her bequest to the Home is "subject to the conditions and provisions heretofore mentioned, and set forth", i.e., the indefinite failure of Wilmer's issue. She has expressly made her gift subject to a condition precedent. Issue of Wilmer are still living, but all succeeding gifts of income are void for remoteness as the Supreme Court has already applied the rule against perpetuities in this case. An estate, dependent upon a condition precedent, can vest only if the terms of the condition are satisfied, and, as pointed out by the learned auditing judge, if perform-

---

[3] Before Gest, J., in 1931 (15 D. & C. 594, 598), the church contended that the "phraseology of the gift for the erection of a church must be interpreted to mean a gift of the entire principal, except $5000, which was given to The Home for Aged Couples, if the home should be in existence, when the trust for income terminates." Judge Gest responded, "Perhaps that was the thought in the mind of the testatrix, but she certainly failed to express it, and I have been referred to no case which would authorize such an interpretation." Since the church did not appear at the current audit, we assume that they are completely satisfied with Judge Gest's opinion, as are we.

ance be impossible, even through no fault of the legatee, the estate will never vest: Hunter, Pa. O. C. Commonplace Book (2d ed.), Vol I, §6 (a), p. 297, citing Gilliland v. Bredin, 63 Pa. 393; Adams v. Johnson, 227 Pa. 454; Gunning's Estate, 234 Pa. 139; Thompson's Estate, 304 Pa. 349; Werren's Estate, 20 Erie 276.

It is a fallacy to contend, as does counsel for the Home, that only the gifts of income were void for remoteness and that this remainder gift was not directly affected by the rule. The classic statement of the rule against perpetuities is that "no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest": Gray, Rule Against Perpetuities (4th ed., 1942), p. 191. It is the possibilities[4] existing at the creation of the future interest which determine its invalidity. "It is a conceded principle that the future interest must vest within a life or lives in being and twenty-one years. It is not sufficient that it may vest. It must vest within that time or the gift is void, void in its creation. Its validity is to be tested by possible and not by actual events . . .": Coggins' Appeal, 124 Pa. 10, 30.

Since at testatrix's death it was impossible to foretell the extinction of Wilmer's issue within the duration of a designated life and 21 years, this remainder to the Home could not possibly be certain to vest in time. A gift in remainder which may not vest until after the total and indefinite failure of issue is void under the rule, and it will not be validated just because the beneficiary is a charity: Ledwith v. Hurst, 284 Pa. 94; Penrose's Estate, supra; and see Hillyard v. Miller, 10 Pa. 326.

---

[4] Actualities, not possibilities, determine validity of trusts created after January 1, 1948; Estates Act of April 24, 1947, P. L. 100, secs. 4(b), 21, 20 PS §§301.4(b), 301.21.

Counsel's ratiocination to avail himself of section 15 (c) of the Wills Act of 1917, is ingenious, but without support of any authority. The invoked section is as follows: "Unless a contrary intention shall appear by the will, such . . . personal estate or interests therein, as shall be comprised or intended to be comprised in any . . . bequest in such will contained, which shall fail or be void . . . by reason of such . . . bequest being contrary to law, or otherwise incapable of taking effect, . . . shall be included in the residuary . . . bequest, if any, contained in such will. In any case where such . . . bequest, which shall fail or be void . . . as aforesaid, shall be contained in the residuary clause of such will, it shall pass to and be divided among the other residuary . . . legatees, if any there be, in proportion to their respective interests in such residue."

Counsel contends that the life estates which are void for remoteness, "being contrary to law . . . shall be included in the residuary . . . bequest." Having consigned these void interests arguendo to the ultimate residuary bequest, counsel then insists that they bring life, not to themselves, but to the Home's legacy of $5,000, i.e., they "pass to . . . the other residuary . . . legatee."

In disposing of this contention, we note that the will gives "all the rest, residue and remainder" of the estate, i.e., both income and principal, into the trust here considered. The phrases "residuary bequest" and "residuary clause" as used in section 15 (c) are more than labels, for it is the dispositive language of the testament that counts and must determine whether we are dealing with a residuary clause in the true sense. While no technical mode of expression is necessary, a residuary clause should dispose of the entire estate: Slater Estate, 377 Pa. 285; Armstrong Estate, 347 Pa. 23, 25; Haak's Estate, 342 Pa. 93; Bricker's Estate, 335 Pa. 300, 303; and this can present a difficult

problem in construction as the above cases well illustrate. This testatrix has provided for disposition of her entire remainder only upon the extinction of Wilmer's issue and the nonexistence of the Home, two conditions which have not occurred. A residuary clause in a will should be a present unconditional disposition of everything that remains. It is a catch all; a rhetorical device whereby the testator provides presently for the ultimate disposition of his entire estate. Its taking effect depends not on the performance of certain conditions, but rather on the nonoccurrence of any or all conditions, whether specified or inferred. If the clause's effectiveness depends on a condition, and the will provides no alternative disposition upon the nonperformance of the condition, then failure of the condition must inevitably result in an intestacy. In such circumstances, that which the testator may have designated a residuary clause, turns out to be no residuary clause at all.

If we assume, however, that the language of this will constitutes a residuary clause within the meaning of section 15(c), then the difference in the quality of these estates precludes application of the section. This was the ruling some 42 years ago by the late Judge Gest in McNulty's Estate, 29 Dist. R. 709. Judge Gest had served as one of the three commissioners who had drafted the Wills Act of 1917 and was well qualified to construe its provisions. Of section 15(c) he wrote (p. 711): "The obvious intention of the act was to introduce the principle that in devises of this nature the void or revoked share is to be divided among the other residuary devisees in proportion to their respective interests. This contemplates the case where the residuary devisees are given aliquot shares in the residue, and not to a case like the present, where the devisees are respectively life tenant and remainderman and thus given estates of a different quality." Judge

Gest's construction was followed by our court in Maris' Estate, 12 D. & C. 783, 788, and approved by our Supreme Court in Morgan's Estate, 340 Pa. 465, 466-7.

While we are thoroughly satisfied that the exceptions are devoid of merit, we have treated them at length in the hope that when we now drop the curtain on this extended litigation (one appearance before our Superior Court, two before the Supreme Court, and six before our court en banc), it will never rise again. Accordingly, the exceptions are dismissed, and the adjudication is confirmed absolutely.