JANUARY TERM, 1883, No. 28.                 MARCH 5, 1883.

## Conrow's Appeal.

1. Where a testator devised real estate to his children and in a subsequent item of his will provided that all the bequests are " given to my three children during their natural lives, and not to be sold or disposed of by them. At the decease of all or either of them, it is to descend to their heirs and legal representatives;" *Held*, that the children took a fee in said real estate, and that the general restraint upon the right of alienation was void.

2. The will further provided that "I . . . do hereby give, devise and bequeath unto my executors . . all my estate, real, personal, and mixed, whatsoever and wheresoever, in trust for the purpose herein specified and subject to the limitations and reservation in items before mentioned," and that " the final settlement is to be made when my son, Alfred T., arrives at the age of twenty-five years, if living ; if not, when he would be that age," the whole will showing the intention that the distribution should not take place until that time. *Held*, that the effect of the language is to postpone the time when the fee may take effect in possession to the arrival of Alfred T. at the age of twenty-five years, giving the executors the right to collect the rent in the meantime; and that the trust so created is not contrary to the act of 18 April, 1853, providing against trusts for accumulation.

3. It is one plain duty, in construing a will, to harmonize its provisions throughout, if that construction is reasonably within the probable intent of the testator, and if the will is equally susceptible of two different constructions, that is to be preferred which reconciles its different provisions and brings them into some consistent plan of disposition.

4. The construction must be that which is consistent with the whole scheme of the will, and particular expressions that would stand in the way of the intent of the testator are to be construed in subordination to it or to be disregarded.

Before MERCUR, C. J. ; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Appeal of Anna Alida Conrow and Joseph D. Conrow, guardian of Alfred T. Conrow, a minor, from the decree of the Court of Common Pleas, No. 1, of *Philadelphia County*, in the matter of the estate of Thornton Conrow, deceased.

Thornton Conrow died March 15, 1882, leaving a last will and testament, dated July 1, 1881, which was *verbatim* and *literatim* as follows :

Will of Thornton Conrow. Be it remembered that I, Thornton Conrow, merchant, of the city of Philadelphia, being of a sound mind, memory, and understanding do publish and declare this my last will and testament,

hereby revoking and making void all former wills by me at any time made.

*Item 1.* I direct that my funeral be conducted in a plain and becoming manner.

*Item 2.* I direct that all my debts and funeral expenses be paid as soon as practicable out of the first moneys that may come into the hands of my executors.

*Item 3.* I give and bequeath, until the final settlement of my estate, direct my executors to pay annually unto Sarah Chew, daughter of William Brown, deceased, if she so long lives, the sum of one hundred dollars ($100) in semi-annual instalments of fifty dollars each, on the first days of January and July successfully.   In the event of her surviving till the final settlement of my estate, I hereby give and bequeath, and direct my executors to pay, to Samuel Twomy, son of Sarah Chew, of Hammonton, N. J., the sum of five hundred dollars in cash and in lieu of the annuity mentioned in this item, to be held in trust for the benefit of Sarah Chew during her life, and the remainder, after her death, to the said Samuel Twomy and his heirs absolutely.

*Item 4.* I give and bequeath and direct my executors to pay Alice Roach, at the final settlement of my estate, should she then be living, the sum of $250.   I also give and bequeath and direct my executors to pay the said Alice Roach (long of my household) an annuity of $50, from the time of my decease, during, and until the final settlement of my estate, should she so long live.

*Item 5.* I give and bequeath unto my great nephew, Thornton Conrow Lippincott, son of Darling Conrow Lippincott, the sum of one hundred dollars ($100), and direct my executors to pay the same, without interest, when my son, Alfred Thornton, shall arrive at the age of twenty-five years, if he, Thornton Conrow Lippincott, should so long live ; if not living, to then merge into my estate.

*Item 6.* I give and bequeath and direct my executors to pay Thornton Conrow, son of Joseph B. Hancock, upon his arriving at the age of twenty-five, the sum of fifty dollars ($50) ; if he should not so long live, then the amount is to merge into my estate.

*Item 7.* I give and bequeath and direct my executors to pay to my niece, Lydia L. Green, at the final settlement of my estate, should she then be living, the sum of fifteen hundred dollars ($1,500.)   I also give and bequeath and direct my executors to pay the said Lydia L. Green an annuity of $90, from the time of my decease, during

and until the final settlement of my estate, should she so long live.

*Item 8.* I give and bequeath unto Darling Conrow Lippincott one fourth of whatever sum of money he may be owing me or my estate at the time of my decease, hereby releasing and discharging him from the one fourth part of the debt due (or unpaid) from him at my decease; and I further order and direct that the said Darling Conrow Lippincott shall and be required to pay annually the sum of $1,000 on the principal of the remaining three fourths of said debt; that he shall also pay annually interest on the three fourths of said debt, at the rate of four (4) per cent. per annum.   In the event of there being an unpaid balance due from said Darling Conrow Lippincott at the time of final settlement, I direct that the same be divided into three equal parts, and notes given by said Lippincott in such separate amounts, adding interest at the rate of four (4) per cent. per annum, payable annually, together with $300 of the principal on each note; that one of said notes be passed by my executors to each of my said children as part of my said estate, and that my children shall release and equit my said executors from the same, as the payment has been made in money.

*Item 9.* I give and bequeath to my son, William Henry, the store No. (5) five North Water street, valued by me at twelve thousand dollars ($12,000); also, a farm near Port Norris, Cumberland county, N. J., known as the William Love farm, valued at two thousand dollars ($2,000.)

*Item 10.* I give and bequeath to my daughter, Anna Alida, the dwelling, No. 1912 Spring Garden st., valued by me at fourteen thousand ($14,000) dollars.

*Item 11.* I give and bequeath to my son, Alfred Thornton, three houses, Nos. twelve hundred and three, 1205, and 1207 Potts st., valued by me at four thousand five hundred ($4,500) dollars, and the undivided one half part of a court on Chenango st., owned by Precillia G. Cuthbert and myself, one half valued at three thousand ($3,000) dollars, and a farm in Burlington county, N. J., near Medford, containing about one hundred and thirty-four acres, known as the Sharp farm, valued at six thousand dollars ($6,000.)

*Item 12.* All the bequests to my children in nine, ten, and eleven to be free and clear of all incumberance. If there should be any incumberance against any of the property described in items 9, 10, and 11 at my death, the same is to be paid off by executors as any other

debts that I may owe within three years after my death ; and my said executors shall pay the interest on the same from my joint estate until the principal is paid off. All the bequests in items nine, ten, and eleven is given to my three children during their natural lives, and not to be sold or disposed of by them. At the decease of all or either of them, it is to descend to their heirs and legal representatives, except my son, William Henry. He may at any time sell the Love farm, heretofore described in No. 9. If I should sell or dispose of any of the property bequeathed to my children before my decease, then my child is to receive the amount of said propperty so disposed of at the price named in cash from my estate within three years from my death, with interest, to be paid annually from my death at five (5) per cent., untill the said principal is paid to him, her, or them. The final settlement is to be made when my son, Alfred T., arrives at the age of twenty-five years, if living ; if not, when he would be that age.

*Item 13.* The rest and remainder of my estate I give and devise and bequeath in equal parts, share and share alike, unto each of my children, William Henry, Anna Alida, and Alfred Thornton, and to his, or her, or their issue ; and in default thereof in any case to the survivors or survivor, his, her, or their issue absolutely and forever. In the event of the death of either of my said children, leaving issue, before the final settlement and distribution, said issue, my grandchild or grandchildren, to take and receive the sum of my said deceased child.

*Item 14.* From the time of my decease untill my estate shall be fully settled my said executors shall act as trustees of my children, and shall advance such sum or sums of money as may be required for the support and education. Interest shall be charged upon all such advances from the time of payment till the final settlement, and such advances, with interest, shall be a charge upon each share or legacy respectfully.

*Item 15.* It is my will and purpose, and I hereby order and direct my interest in propperty known as the Longwood farm, situated in Baltimore county, Maryland, shall not be sold or conveyed away by my executors or children until my son, Alford Thornton, shall, or would if living, arrive at the age of twenty-five years.

*Item 16.* It is my will and purpose, and I hereby order and direct, that my one third interest in propperty situated in the State of West Virginia, owned by Benjamin Rich and R. D. Wood's Sons and myself, shall not be sold or

conveyed before my son, Alford Thornton, shall arrive at the age of twenty-five years, if living; if deceased, not until he would of been twenty-five years of age if he had so long lived, unless they can sell at a fair price—not less than one dollar per acre.

*Item 17.* I order and direct, positively, beyond question or cavil, that if any of my heirs or legatees shall be dissatisfied with the provisions of this my last will, and commence proceedings in law to test the same, for any cause whatsoever; I direct that the person or persons so doing shall be deprived of all right and benefit in my estate, except that left to them during their natural lives.

*Item 18.* For this purpose of my will, I, Thornton Conrow, do hereby give, devise, and bequeath unto my executors, hereafter named, all my estate, real, personal, and mixed, whatsoever and wheresoever, in trust for the purpose herein specified, and subject to the limitations and reservation in items before mentioned, I hereby authorize and empower my said executors, and the survivor of them, to sell and dispose of all, or any portion, of the residue of my real or personal estate, at public or private sale, for such price or prices, and upon such terms and conditions, and at such times or time as to them in their discretion, or the survivor of them, may seem best, and to grant and convey the same to the purchaser, or purchasers, his, her, or their assigns, from all liability for, in, or on account of the purchase-money, the application therof; and they, my executors, are not to give any security in this or any other State where said propperty may be so situated.

*Item 19.* I nominate and appoint my esteemed friend, Burtis Barber, and my oldest son, William Henry, to be the executors of this my last will and testament, or the survivor of them.

In witness whereof, I have set my hand and seal to this my last will and testament, all these sheets of paper, on this first day of July, eighteen hundred and eighty-one (1881).

*Note.*—The interlining in item twelve was done before signing, it being between the last two lines in that item.

THORNTON CONROW, [SEAL.]

March 21, 1882.    Letters testamentary were granted to Burtis Barber. The testator left no widow, but three children, William H. Conrow, Anna Alida Conrow, and Alfred T. Conrow, a minor, for whom Joseph D. Conrow was appointed guardian.

William H. Conrow died April 15, 1882, intestate, un-

[Conrow's Appeal.]

married, and without issue. In his lifetime he had been a member of the firm of Conrow, Barber & Co., which was composed of the testator, William T. Barber, and the said William H. Conrow, and occupied, under a lease, the premises No. 5 Water street, referred to in Item No. 9 of the will.

The rent accruing was claimed by the executor and also by Anna Alida Conrow, and the guardian of Alfred T. Conrow.

The surviving partner, William T. Barber, then filed a bill against all of the parties claimant by way of interpleader.

The Court below entered a decree that the executor was entitled to receive the rents until the time fixed by the testator for the final settlement.

Anna Alida Conrow and Joseph D. Conrow, guardian, then appealed, assigning that the Court erred in entering the decree, and in not decreeing that the appellants were exclusively entitled to receive the rents.

*S. Morris Waln* for appellants.

In Item 12, the word "heirs" is a word of limitation, and the rule in Shelley's case vests a fee in William H. Conrow: Theobald on Wills, 219; Price *v.* Maxwell, 28 Penna., 23; Porter's Appeal, 45 *Id.*, 201; Yarnall's Appeal, 70 *Id.*, 335; Doebler's Appeal, 64 *Id.*, 9; Criswell's Appeal, 41 *Id.*, 288. The word "descend" shows the idea of limitation: Haldeman *v.* Haldeman, 4 Wr., 30; Criswell's Appeal, 41 Penna., 288; Allen *v.* Markle, 12 Casey, 117; Quillman *v.* Custer, 7 P. F. Sm., 125. The words "legal representatives" are merely superadded words of limitation, and not sufficient to change the technical meaning of the word heirs: Paxson *v.* Leaffert's, 3 Rawle, 59; Nice's Appeal, 14 Wr., 143; Physick's Appeal, 14 Wr., 128; Abbott *v.* Jenkins, 10 S. & R., 296; Moss *v.* Sheldon, 3 W. & S., 160.

In Item 18, the words "all the property subject to the limitations, &c.," mean that all except the specific devises in Items 9, 10, and 11 are to be held in trust.

A trust for the education and support of a person *sui juris* until a minor reaches the age of twenty-five years is void under the act of 1853, relating to accumulations: Washington's Est., 75 Penn., 102; Mitcheson's Est., 11 W. N. C., 547. A general restraint upon the right to alien a fee is void: Curtis *v.* Longstreuth, 8 Wr., 297; Doebler's Appeal, 14 P. F. Sm., 9; Criswell's Appeal, 5

Wr., 288 ; Jauretche *v.* Proctor, 12 Wr., 466 ; McWilliams *b.* Nisly, 2 S. & R., 513 ; Reifsnyder *v.* Hunter, 7 Harris, 41.

*John H. Sloan* for appellee.

The trust is not in violation of the act 18 April, 1853 : Purdon's Digest, 1245. This act applies against accumulations after majority of any person entitled.

There is nothing in the rule in Shelley's case to prevent the estate from remaining in the hands of the executors until the time fixed for final settlement, at which time it might be conceded they would take a fee in possession : Sheet's Appeal, 2 P. F. Sm., 258 ; 4 Kent's Com., 220 ; Findlay *v.* Riddle, 3 Binney, 153 ; Powell *v.* Board of Dom. Missions, 13 Wr., 59 ; Bacon's appeal, 7 P. F. Sm., 504 ; Shirey *v.* Postlethwaite, 22 P. F. Sm., 41. The general intent of the testator was that the whole estate should remain in his executor's hands until the youngest son should be twenty-five years of age. Where there are contradictory clauses the last must take effect : Sheetz's Appeal, 1 Norris, 213 ; Lewis' Est., 3 Wh., 162 ; Hitchcock *v.* Hitchcock, 11 Casey, 393 ; Yarnall's Appeal, 20 P. F. Sm., 335 ; Horwitz *v.* Norris, 10 P. F. Sm., 261.

MARCH 5, 1883.—The opinion of the Court was delivered by CLARK, J.:

This contention arises upon a bill in equity, in the nature of a bill of interpleader, filed by William T. Barber, surviving partner of Thornton Conrow, deceased, against Anna Alida and Alfred T. Conrow, surviving children, and Burtis Barber, executor of the last will and testament of said Thornton Conrow, deceased.

The bill recites that Thornton Conrow died on the 15th day of March, 1882, after having made a will, dated July 1st, 1881, which, on the 21st day of March, 1882, was duly admitted to probate, and letters testamentary thereon granted to Burtis Barber by the register of wills of Philadelphia, a copy of which will was annexed to and made part of the bill ; that the said decedent left no widow surviving him, but left three children, viz : William H., Anna Alida, and Alfred Thornton, the last named being a minor of fifteen years ; that William H. died April 15th, 1882, intestate, unmarried, and without issue ; that the testator at his death was the owner of the premises No. 5 North Water street, in the city of Philadelphia, and the firm of Conrow, Barber & Co., of which the plaintiff was the sole surviving partner, were tenants occupying the said premises at a yearly rental of $1,000, paya-

ble in quarterly installments of $250 each, one of which said payments was due May 1st, 1882 ; that this rent was demanded by the executor, Burtis Barber, on the one hand and by Anna Alida and Alfred Thornton Conrow, the surviving children, on the other, and that legal proceedings were threatened.

The prayer of the bill was that the said defendants be ordered to interplead for their respective claims. Joseph D. Conrow was appointed guardian *ad litem* of Alfred Thornton and made party to the record.

The separate answer of Burtis Barber, Anna Alida and Joseph D. Conrow, guardian aforesaid, admitted the facts stated in the bill; the respondents maintained their respective claims, and submitted themselves to the order and decree of the Court; thus the issue was framed.

The following is a copy of the last will and testament of Thornton Conrow, deceased ; and the only questions submitted arise upon its proper construction. (His Honor here read the will.)

There can be no doubt but that the several devises made in the 9th, 10th, and 11th items of the last will and testament of Thornton Conrow, deceased, created estates in fee, in the devisees therein named respectively. The word "heirs" is presumptively a word of limitation, and not of purchase, and we are of opinion that there is no sufficient evidence, found in the will, of the testator's intent to deviate from the general rule ; indeed, the evidence is rather corroborative of the legal presumption, and tends to establish that it was the testator's actual purpose to devise the fee ; he probably intended what he expressly directed, that at the decease of all or either of his children, the lands devised to them should descend to their respective heirs and legal representatives.

Certainly, the paramount and general intent of the testator, as shown by the entire will, is, that the heirs are to take *qua* heirs ; therefore, they take by descent, and the inheritance must, under the rule, vest in the ancestor. And although, in a subsequent clause, he provides that the lands referred to are given to his said children during their natural lives, and not to be sold or disposed of by them, this particular intent must necessarily be subordinated to the general and controlling principle of his will : Physick's Appeal, 14 Wright, 136 ; Doebler's Appeal, 14 Smith, 17. A general restraint upon the right of alienation is void, and that clause of the will should be disregarded : Criswell's Appeal, 5 Wright, 288 ; Naglee's Appeal, 33 Penn. St., 89, Jauretche *v.* Proctor, 48 Penn.

St., 466.   Are the lands described in Items 9, 10 and 11 of the will embraced in this trust? If they are, then the estate of the testator must remain in the control of the executor under the trust "·until the final settlement," and the accruing rents are properly payable to the executors as trustees; if not, the rents are payable to the appellants; this is the main question in the cause.   The trust thus created is undoubtedly an active one, embracing the full temporary management and control of a large part, at least, of his estate, the sale and conveyance of the "residue" of his realty at the discretion of his trustees, the disposal of his personalty, the payment of annuities, contingent legacies, debts and incumbrances out of the "joint" or residuary estate, and the support and education of his children; the trust being thus active, and subsisting in the executors, we are required to consider its extent.   The general and paramount intent of the testator, as we gather it from the body of the will, seems to be that the distribution of his estate should not take place until his son, Alfred Thornton, should arrive at the age of twenty-five years.   The testator is everywhere throughout the will emphatic and precise upon this particular.   He refers to this "settlement" some fifteen or more times in the several clauses of the instrument, designating the time either as " the time of the final settlement," or "the time when Alfred Thornton shall arrive at the age of twenty-five years;" it is clear that the will was only to have its full effect then.   It is also worthy of remark that, whilst this will is drawn in consecutive paragraphs, each of which contains a distinct and separate provision, at the close of item 12, which has for its proper subject the nature and extent of the estate devised in Items 9, 10, and 11, the testator concludes, as if the remark had some significance in that place, "the final settlement is to be made when my son Alfred T. arrives at the age of twenty-five years, " &c., &c.

In Item 12 he reserves to William Henry the right to sell the Love farm, described in Item 9.   In Items 15 and 16 he directs that the Longwood farm and the West Virginia lands shall not be sold or conveyed until Alfred Thornton shall arrive at the age of twenty-five years, and the authority to the executors subsequently given is thus limited.

The devise to his executors, as trustees in the 18th item, is of "*all my estate, real, personal, or mixed, whatsoever and wheresoever*, in trust, for the purpose herein specified, and subject to the limitations and reservations in items be-

fore mentioned." It is contended that the "limitations and reservations" to which the devise in trust is subject are the previous devises in Items 9, 10, and 11, and that they are not therefore embraced in the trust. We do not think so, as those devises could not, in any sense, be termed "limitations" or "reservations," as, however, in previous clauses of his will he had reserved out of the trust a right to William Henry to sell the Love farm, and limited the power of his trustees in the sale of specific portions of his estate, we infer these limitations and reservations to have been intended, subject to which the trust certainly was intended to be. It is observable that the writer of this will, although defective in orthography, possessed some knowledge of legal phraseology and of the meaning and use of technical words, and it is highly probable that the words "reservations" and "limitations" were rightly applied, especially as there were proper subjects in the body of the will to which they were strictly applicable. The testator certainly created an estate in fee to his children in Items 9, 10, 11, and 12, and the only effect of the language used in Item 18 is to postpone the time when the fee may take effect in possession. It is one plain duty in construing a will to harmonize its provisions throughout, if that construction is reasonably within the probable intent of the testator; and if the will is equally susceptible of two different constructions, that is to be preferred which reconciles its different provisions, and brings them into some consistent plan of disposition. To give the words used in Items 9, 10, and 11, the effect claimed for them by the appellants is to defeat the force of the language used in Item 18. Whilst to give the latter its proper effect, in no way defeats the estate created in the previous clauses, but simply fixed a time when they shall come into the possession and control of the devisees. The intention of the testator is not to be gathered from the terms of a particular devise, the construction must be that which is consistent with the whole scheme of the will, and particular expressions that would stand in the way of the general intent of the testator are to be construed in subordination to it or disregarded: Middlesworth v. Blackmore, 74 Penn. St., 414; Doebler's Appeal, 64 Penn. St., 9; Schotts' Estate, 78 Penn. St., 40; Reck's Appeal, 78 Penn. St., 432.

The testator, claiming the right to dispose of his property according to his own judgment and discretion, was determined that the disposition which he had made would be accepted by those beneficially interested without objection, and hence, in Item 17, he imposed *in terrorem* a

penalty upon any of his beneficiaries who might take legal proceedings against it. Having thus provided, he says: "For this purpose of my will, I, Thornton Conrow, do hereby give, devise, and bequeath unto my executors," &c., &c. If the creation of the trust was in part "for this purpose" of his will, it was manifestly his purpose to embrace in the trust the devises made to those who could, of course, be the only possible contestants of his will. He provides for the maintenance and education of his children by directing the trustees to "advance" such sums of money as may be required for that purpose, and that such advances, with interest thereon, shall be a charge upon each share or legacy, &c., thus recognizing the fact that they had no available means of maintenance or support outside the trust. Nor was the trust thus created in violation of the act of April 18, 1853, providing against trusts for accumulations after the majority of the persons entitled. Such was not the purpose or intent of the testator, nor the effect of upholding the trust; there were debts to pay, incumbrances to remove, and advances to make for the maintenance and education of the children, and all the income may be needed for this support and education. At all events, it is quite sufficient for the present to say that the act referred to forbidding trusts for accumulation by its express terms does not avoid such trusts *in toto*, but only for the excess beyond the statutory period: Purdon's Digest, Vol. 2, p. 1245; Brown *v.* Williamson's Executors, 12 Casey, 338. Alfred Thornton being still in his minority, the act could not, by any construction, be held to defeat this trust.

We are, therefore, of opinion that the premises No. 5 North Water street, in the city of Philadelphia, devised to William Henry Conrow, were devised to him in fee, but, that by the creation of the temporary trust in the executors, the time of its enjoyment in possession was postponed to take effect when Alfred Thornton Conrow should arrive at the age of twenty-five years, that this was an active subsisting trust, and was not contrary to the act of April 18, 1853, providing against trusts for accumulation.

Therefore, the decree is affirmed, and the appeal dismissed at the costs of the appellants.