# Leisenring's Estate.

*Wills—Vested and contingent estates—Income—Accumulations.*

1. A testatrix by will provided for certain annuities payable out
of the income of her estate, and further provided that "any bal-
ance of income shall be divided between the children of M., if
any, and upon her death the principal of said estate, subject to
the......annuities, shall be divided between the children of M.
then living," with remainder over if she left no children.   When
the will became operative, M. was unmarried but three years later
she intermarried and two years later had one son.   The same year
there was a fund for distribution consisting of a balance of sur-
plus income, derived in part prior to the birth of M.'s son and in
part subsequent thereto.   *Held,* that M.'s child took both the part
of the fund which accrued after his birth and the part accruing
prior thereto.

2. In such a case, the gift of surplus income was immediate,
not being built upon the determination of any prior estate but
given direct to the beneficiaries who are made primary legatees;

and the fact that the testatrix knew of the nonexistence of such beneficiaries when she wrote her will is immaterial.

3. A general residuary bequest, contingent in terms, carries the intermediate income which is not disposed of but accumulates. If the will is silent on the subject of a direction to accumulate, the law will supply the intention and allow the accumulation within the statutory period.

4. A limitation which transgresses the rule against perpetuities is void altogether, while a provision for accumulation contrary to the statute is void only for the excess.

Argued April 10, 1912.  Appeal, No. 53, Jan. T., 1912, by Truman M. Dodson, 2d, Father and next Friend of Charles M. Dodson, Jr., a minor, from decree of O. C. Luzerne Co., No. 519, of 1904, dismissing exceptions to adjudication in Estate of Mary S. Leisenring, deceased. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ.  Reversed.

Exceptions to adjudication.
Opinion of the Supreme Court states the case:

*Error assigned,* among others, was the decree of court awarding distribution.

*Wesley K. Woodbury* and *William W. Porter,* with them *Andrew H. McClintock,* for appellant.—The provisions of the will do not violate any rule of law: Yard's Appeal, 64 Pa. 95; Denlinger's Est., 170 Pa. 104; Lawrence's Estate, 136 Pa. 354; Heisse v. Markland, 2 Rawle 274; Schuldt's Est., 199 Pa. 58; Siddall's Est., 180 Pa. 127; Roney's Est., 227 Pa. 127; Lennig's Est., 154 Pa. 209; Spring's Est., 216 Pa. 529; Gowen's App., 106 Pa. 288; McKee's App., 96 Pa. 277; Sunderland's Est., 203 Pa. 155; Talbot v. Jevers, L. R. 20 Eq. Cas. 255; Weatherall v. Thornburgh, L. R. 8 Ch. Div. 261.

*Laird H. Barber* and *William S. McLean,* for appellee.—If we are to seek for the intention of the testatrix

in the language of her will, we must conclude she gave no vested interest in the principal of her estate to any of the children of her niece, that the bequest was contingent, and became vested only upon the death of Mary S. Esser: Roney's Est., 227 Pa. 127; Mulliken v. Earnshaw, 209 Pa. 226; Coggins's App., 124 Pa. 10; Rhodes' Est., 147 Pa. 227; Howell's Est., 180 Pa. 515; Walters's Est., 223 Pa. 598.

Under the will of Mrs. Leisenring, the gift is to the children of Mary S. Esser, if any, as a class: Harrison's Est., 202 Pa. 331; Denlinger's Est., 170 Pa. 104; Woelpper's App., 126 Pa. 562; McBride v. Smyth, 54 Pa. 245.

Measuring this will by its possibilities, not by facts as they happen to be, it is easy to see that children may be born at any time during the life of Mrs. Dodson, in which case the gift may not vest within the period fixed by the act relating to accumulations: Walters's Est., 223 Pa. 598; McBride's Est., 152 Pa. 192; Washington's Est., 75 Pa. 102; List v. Rodney, 83 Pa. 483; Woelpper's App., 126 Pa. 562; Reilly's Est., 200 Pa. 288; Coggin's App., 124 Pa. 10; Minnig v. Batdorff, 5 Pa. 503; Williamson's Est., 143 Pa. 150; John's Est., 2 W. N. C. 632.

In the present case the minor now in being is not the person who would have been entitled, if accumulation had not resulted, under the bequest above cited; he is neither residuary legatee, nor next of kin; nor is there a gift to him or any person of a vested interest in the principal of the estate which would carry with it the income as it accrues: Wright's Est., 227 Pa. 69; Weinmann's Est., 223 Pa. 508; McBride's Est., 152 Pa. 192; Donohue v. McNichol, 61 Pa. 73.

The Pennsylvania cases above cited are not in harmony with the rule in relation to immediate gifts laid down, in 2 Jarman on Wills 721, that, "if there be no object in esse at the death of testator the gift will embrace all the children who may subsequently come into existence by way of executory gift."

Under the Act of April 18, 1853, P. L. 503, the income could not be held until the birth of a child, for accumulation, except during an existing minority, is forbidden. Not having been disposed of it passes under the intestate laws: Rhodes' Est., 147 Pa. 227; Walters's Est., 223 Pa. 598.

OPINION BY MR. JUSTICE STEWART, July 2, 1912:

The testatrix, a widow, died 25th September, 1904, childless. Her last will was executed 9th December, 1903. By this will she placed the larger part of her estate in trust, and provided for certain annuities for life out of the income therefrom. To her mother, Mrs. Matilda Shippen, she gave an annuity of $1,500, in quarterly payments; to her sister, Mrs. Isabel Esser, an annuity of $1,200, in quarterly payments; to her niece, Mary S. Esser, an annuity of $2,500, in quarterly payments, to be increased to the sum of $10,000 in case she should marry. This further provision follows: "Subject to the foregoing annuities, any balance of income shall be divided between the children of Mary S. Esser, if any, and upon her death the principal of said estate, subject to the payment of the aforesaid annuities, shall be divided between the children of Mary S. Esser then living. If upon the death of Mary S. Esser there be no living children of the said Mary S. Esser, then the principal of said estate, subject to the annuities aforesaid, shall go to Keith Esser, and if he be dead the same shall be divided between the children then living of her brother Keith Esser, if there be any, and if there should be no children of Keith Esser then living, then the principal of the said estate shall be divided among the heirs at law of the said Mary S. Leisenring." It is this provision which gives rise to the present controversy. When the will became operative the niece, Mary S. Esser, was eighteen years of age and unmarried. Three years thereafter she married Truman M. Dodson, and as

the fruit of this marriage one son, Charles M. Dodson, was born 2nd August, 1909. On 17th December, 1909, the Fidelity Trust Company, trustee under the will, filed its first account charging itself therein with a balance of $7,403.17 of income remaining after the payment of the specific annuities. Of this sum $5,798.83 represents surplus income derived after the birth of the son to Mrs. Dodson. By the adjudication this entire balance was awarded the legal representative of the deceased mother of testatrix, Matilda Simpson, who was next of kin, on the ground that the gift of the balance of income of the trust fund after payment of the annuities to the children of Mary S. Esser, transgresses the Act of April 18, 1833, P. L. 503, which forbids accumulations of income beyond statutory period, and is therefore void. The appeal from this decree is on behalf of the infant son of Mary S. Esser, now Dodson, by his father and next friend.

We cannot adopt the view taken of this case in the court below. By a process of reasoning not warranted by settled rules of construction, the learned judge of the Orphans' Court reached the conclusion that the testatrix did not intend an immediate gift of the surplus income to the children of Mary S. Esser, and from this conclusion he derives the inference that testatrix intended an accumulation of income for their benefit. Clearly there was no occasion here to look beyond the letter of the bequest to determine its character. That the gift was immediate admits of no dispute. Language could not have made it plainer. No prior estate or interest in the surplus income is created, and had child or children of Mary S. Esser been in existence at the death of testatrix such child or children would have at once taken. The fact that testatrix knew of their non existence when she wrote her will, is a matter of no consequence so far as regards this particular inquiry. It is enough to know that the gift is not limited upon

the determination of any prior estate, but is direct and immediate to the beneficiaries indicated, who are made primary legatees. Whether a gift to a primary legatee is absolute or qualified becomes a question of intention on the part of the testator only where the first expressions are ambiguous. Where the intention is expressed nothing that afterwards follows can affect the construction of the positive gift. Gifts such as that we are here considering, that is to say, to objects not in existence, may be unusual, but they are quite as strictly legal as any other, and their incidents and legal consequences are as clearly defined. For instance, it is well settled that where there is an immediate gift to children, and there is no object in esse at the death of the testator, the gift will embrace all the children who may subsequently come into existence, by way of executory bequests: 2 Jarman on Wills 721; Hawkins on Wills 70; Williams on Executors 1175. The disposition the law will make of intermediate income accruing before the takers come into existence, where the will is silent on the subject, is quite as well settled. In Harris v. Lloyd, Turner & Russell, Ch. Rep. 310, a leading authority on the subject, the legacy was in trust for the children of A. A had no children at the death of the testator. It was held by Lord ELDON that after-born children would take, and that the interest until the birth of a child fell into the residue. This latter rule has a double significance in the present case, since it settles as well the controversy we have here with respect to so much of the fund for distribution as accrued before the birth of Mary S. Esser's child. As to that part of the fund which accrued after the birth—except as the gift is void for the reasons stated by the learned judge of the Orphans' Court—the appellant's right to it is not open to controversy. No more is that part which accrued prior to his birth under the authority of the case above cited. The subject of the gift was the income of the trust estate. After directing that certain specific legacies in

the shape of annuities, and therefore not variable, should be paid thereout, testatrix ordered that "subject to the foregoing annuities, any balance of income shall be divided between the children of Mary S. Esser if any." Here we have a general residuary bequest, contingent in terms. The rule in such cases as stated by Mr. Hawkins in his work on wills, page 43, is as follows: "A general residuary bequest, contingent in terms, carries the intermediate income, which is not undisposed of, but accumulates." Thus, he says, in supporting the rule, "if the testator bequeathed the residue of his personal estate to such son of A as shall first attain twenty-one, and A has no son at testator's death, the income of the residue does not go to the next of kin, but accumulates in trust for a son of A who may come into existence. The same rule seems to have been extended in Bullock v. Stones, 2 Vesey, Sen. 521, to a bequest of all my personal estate at A. But with respect to specific bequests generally the rule appears to be that the intermediate income does not pass to the legatee until the period of vesting." The rule and distinction here indicated between specific and residuary bequests is generally recognized. Mr. Jarman states the rule quite as explicitly. We quote from the text appearing on page 246, Vol. 2: "A residuary bequest of personalty, it is well known, does (though contingent on its terms) carry the prior income"; and for this he cites a number of cases.

Now, it is wholly immaterial to inquire whether the testatrix contemplated an accumulation of income between the period of her death and the birth of a child to Mary S. Esser. If the will is silent on the subject the law will supply such intention, and allow the accumulation within statutory period. Should the construction of the will carry the accumulation beyond the statutory period within which accumulations are permissible, the law will stop the accumulations at this point, and thenceforth give the income to the next of

kin. It will not declare the gift void because of such transgression, but will avoid so much of it as does transgress the restrictions of the Act of 1853: Brown v. Williamson, 36 Pa. 338; Conrow's App., 3 Penny. 356. It was therefore error to hold that the gift in this instance was void because of the Act of 1853 forbidding accumulations, no matter what the purpose of the testatrix was in this respect; an error which resulted from failure to distinguish between the rule governing perpetuities and the rule governing accumulations. "A limitation which transgresses the rule against perpetuities is void altogether, differing in this respect from a provision for accumulation contrary to the statute, which is void only for the excess": Hillyard v. Miller, 10 Pa. 326; Brown v. Williamson, supra; Rhodes' Est., 147 Pa. 227.

We need only repeat that notwithstanding the object of the gift here was not in existence at the death of the testatrix, the gift was a perfectly valid and legal one; and that though the period of enjoyment was necessarily delayed to await the coming into existence of the beneficiary, yet, being a gift of a residuary fund, whatever intermediate accumulations accrued passed with the gift to the beneficiary. Here the beneficiary came into existence within five years from the death of the testatrix, and there is therefore no excess in accumulation to be avoided. Other reasons might readily be given for excluding from all consideration in this case the statute against accumulations were it necessary. We have limited the discussion to the features urged upon our attention as supporting the decree entered. For the reasons stated the decree is reversed, and distribution of the fund is ordered to be made in accordance with the views here expressed.