## Sinkler Trust

Before Klein, P. J., Bolger, Hunter, Lefever, Saylor and Shoyer, JJ.

LEFEVER, J., Auditing Judge.—By irrevocable deed of trust, dated May 13, 1932, settlor, Louise E. Sinkler, transferred to Wharton Sinkler and Provident Trust Company of Philadelphia certain property, in trust, to hold and invest the same, to pay the net income therefrom to settlor's son, Wharton Sinkler, Jr., for life, and upon his death "to pay over the principal to such of his issue, in such proportions and for such uses and purposes" as the said Wharton Sinkler, Jr., should appoint by his last will, or any writing in the nature thereof, with the further right to appoint the

whole or any part of the income therefrom to his wife
for life or any shorter period. Settlor specified that
in default of appointment the principal should be paid
to life tenant's issue at his death, or, if he leaves no
issue, to settlor's other children or their issue.

The settlor by her deed gave the trustees broad
powers of investment, including the powers:

"(c) To purchase investments and securities at a
premium and to deduct such premium from income,
and also to purchase investments and securities at a
discount and to credit such discount to principal. . . .

"(e) To treat as principal and not as income for
the purpose of this Trust, all stock or extraordinary
dividends or proceeds of sale of rights to subscribe to
stock issued with respect to any stock which may from
time to time be held by Trustees as part of this Trust."

By decree of Judge Klein, dated October 7, 1941,
the resignation of Wharton Sinkler as trustee was
approved, effective as of April 10, 1935. Provident
Trust Company of Philadelphia has continued to serve
as sole remaining trustee.

There has been no prior adjudication of this trust.

The main reason for filing the present account is
the death of Wharton Sinkler, Jr., son and life tenant,
which occurred December 25, 1953. Another reason
is to complete the discharge of Wharton Sinkler who
resigned as trustee on April 10, 1935.

Wharton Sinkler, Jr., the son, left surviving him
his wife, Joan Altin Sinkler, and three minor children,
Wharton Sinkler, 3rd, Edwin Corning Sinkler, and
Peter Sinkler.

By decree of this court, dated June 15, 1954, Morton
Witkin, Esq., was appointed guardian ad litem for the
above-named minors, and trustee ad litem for any
unascertained parties who may be interested in the
income and principal of this trust.

Wharton Sinkler, Jr., the deceased son, left a will

whereby in the first item thereof he provided, as follows:

"Pursuant to the limited power of appointment given me in Paragraph (2) of Article FIRST of Deed of Trust dated May 13, 1932, between my mother, Louise Elkins Sinkler, as Settlor, and my father, Wharton Sinkler, and Provident Trust Company of Philadelphia, as Trustees, I direct that such trustees, the survivor and successors of them therein, shall hold the principal of such trust, IN FURTHER TRUST under the provisions of such Deed of Trust with all the powers and duties therein set forth, until twenty-one (21) years after the death of the survivor of my wife, who was living on May 13, 1932, and myself for the following uses and purposes:

"(a) To pay one-half the net income therefrom to my wife, Joan Altin Sinkler, until she may remarry or die, whichever shall first occur;

"(b) During the life of my wife, or until she remarries, to pay the other one-half of the net income therefrom to my issue living at each period of income distribution in equal shares per stirpes; and

"(c) Upon the remarriage or death of my wife, or in the event she predeceases me, upon my death, to pay the net income therefrom to my issue living at each period of income distribution in equal shares per stirpes until twenty-one (21) years after the death of the survivor of my wife and myself and then to pay over the principal of such trust to my issue living at that time in equal shares per stirpes."

By the second item of his will Wharton Sinkler, Jr., gave the residue of his estate to his wife, Joan Altin Sinkler, if she should survive him (which, as aforesaid, she did). He appointed his brother, William L. E. Sinkler, and his cousin, George F. Tyler, Jr., as executors, and he conferred upon said executors certain powers, but they are not trustees as to any of the

individual estate of the appointor for he created no trust concerning the same. It is crystal clear, therefore, that the trustees who were named in the deed of the settlor-donor, whom the donee of the power has designated as trustees to hold the principal in further trust, must look for their powers and duties for administration of the appointed trust estate as they are conferred in the deed of trust and which the appointor has expressly adopted for, indeed, he did "direct that such trustees . . . shall hold the principal of such trust, IN FURTHER TRUST under the provisions of such Deed of Trust with all the powers and duties therein set forth", prescribing the time for duration of the trust in said appointment, and "for the . . . uses and purposes" so appointed and declared by the will of the donee of the power. It is also clear that the appointed estate is to continue to be held by the Provident Trust Company of Philadelphia, which is sole remaining trustee (the individual cotrustee having resigned as aforesaid) in and under the caption of the estate of original settlor-donor, for the uses and purposes so appointed by the donee's will. Such non-segregation of the appointed estate and its continuance in donor's estate conforms to the usual and customary practice, though a donee has appointed in trust within the limits and scope of his power and thus created a trust for the uses and purposes declared and appointed by his will. But in so stating this, the auditing judge does not intend to nor does he necessarily pass upon the entire provisions of the appointment as made by the donee. It is sufficient to say, for the purposes of this adjudication, that the donee had a perfect right to appoint in trust so as to create a trust and give his wife the benefit of a share of the income of the appointive estate, such being within the express provisions of the power conferred by the donor. Hence on this ground alone, an award of the appointed estate is to be made to the sole remaining corporate trustee, irre-

spective of whether a question arises, if indeed it does, as to whether donor in creating the special and exclusive power in favor of issue of the donee has manifested a contrary intent to that contained in the appointment made by the donee, which appointment purports to exhaust the power conferred.

As noted in the statement of proposed distribution, the account shows a number of stock dividends and rights received and credited to principal, as to which a question would be raised at the audit of whether or not these items should be apportioned between principal and income. The question was so raised.

During the period from May 13, 1932, to December 25, 1953, certain stock dividends and rights were issued upon stock held in this trust estate. The trustees did not make any distribution thereof. No claim therefor was made by Wharton Sinkler, Jr., during his lifetime.

It is agreed by all parties in interest that if the Pennsylvania "intact value" rule of apportionment be applied to these stock dividends and rights a portion thereof would constitute principal and another portion income. The Provident Trust Company has prepared a calculation of apportionment, which is approved by all parties in interest, showing, inter alia, that $5,340.19 of these stock dividends would be income and would be payable to the deceased life beneficiary's estate if the Pennsylvania intact value rule of apportionment is to be applied thereto.

Louise E. Sinkler, settlor, is still alive.

Two questions are presented on the subject of apportionment, viz.: (1) did the trustees have power to legally treat all the stock dividends and rights as principal, and (2) if so, did the trustees actually exercise the power and treat the said dividends and rights as principal? These questions will be considered in order.

1. *Did the trustees have power to legally treat the extraordinary dividends as principal?*

Joan Altin Sinkler, widow of Wharton Sinkler, Jr., deceased, and the residuary legatee under his will, takes the position that under the Pennsylvania "intact value" rule, $5,340.19 of these extraordinary dividends were income; that to treat the said stock dividends as principal is an accumulation and a capitalization of income in violation of the statute against accumulations, and therefore, that the $5,340.19 should be distributed as income. The executors of the will of Wharton Sinkler, Jr., deceased, are of record at this audit through the appearance of their counsel, but executors have not taken any active position for or against apportionment in the instant case as they do not wish to take any stand as between the widow of their decedent and his children.

The statute against accumulations, Act of April 18, 1853, P. L. 503, sec. 9, as amended by the Act of April 14, 1931, P. L. 29, 20 PS §3251, provides, inter alia, as follows:

"No person or persons shall, after the passing of this act, by any deed, will, or otherwise, settle, or dispose of any real or personal property, so and in such manner that the rents, issues, interest, or profits thereof, *shall be wholly or partially accumulated for any longer term than the life or lives of any such grantor or grantors, settler or settlers, or testator, and the term of twenty-one years from the death of any such grantor, settler, or testator,* that is to say, only after such decease during the minority or respective minorities, with allowance for the period of gestation of any person or persons, who, under the uses or trusts of the deed, will, or other assurance directing such accumulations, would, for the time being, if of full age, be entitled unto the rents, issues, interests, and profits so directed to accumulate, and in every case where any accumulation shall be directed otherwise than as aforesaid, such direction shall be null

and void in so far as it shall exceed the limits of this act. . . ." (Italics supplied.)

In plain language, this statute forbids accumulations "for any longer term than the life . . . of . . . settler and the term of twenty-one years from the death of any such . . . settler."

A fortiori, the statute does *not* prohibit accumulations during the lifetime of settlor. I am fortified in this interpretation of the statute by the decision and language of Stackpole Trust, 70 D. & C. 20 (1949), and Evans' Deed of Trust, 87 Pitts. L. J. 83 (1939).

In Stackpole Trust, settlor by the deed reserved for himself a life interest in the income of the trust. He prescribed in the deed that ". . . all stock dividends . . . shall be deemed to constitute principal of the trust and shall be treated accordingly." It was held that during the lifetime of the settlor stock dividends could properly be treated as principal without violating the statute against accumulations. President Judge Hipple stated at page 24, et seq.:

"The total period during which accumulations are permissible is provided in the act to be 'the life or lives of any such . . . settler . . . and the term of twenty-one years from the death of any such . . . settler'. This clause is in the conjunctive, joining the settlor's lifetime with a term of 21 years from his death, thereby forming an entire period during which income may be lawfully accumulated. Therefore, if an accumulation is permissible during a life and 21 years thereafter, it logically follows that an accumulation is good during the life alone.

"The succeeding words of the act, 'that is to say, only after such decease during the minority or respective minorities with allowance for the period of gestation of the person or persons who . . . would . . . if of full age, be entitled, etc.' explain and limit, not the

whole of the clause preceding, but only that portion which relates to the 21-year period following the settlor's death. If construed otherwise, it would not have been necessary to refer to the period of settlor's own life. Thus the allowable period of accumulation is the life of the settlor, plus the minority of the subsequent beneficiary, which in no event can exceed the period of gestation and 21 years thereafter. . . .

"*However, there is nothing in the act which restricts the accumulation of income during the life of the settlor.* It is only after settlor's death that accumulation is restricted to the minority of a person entitled to the income directed to be accumulated. *The term of 21 years from the death of the settlor cannot, of course, commence to run until settlor has died.* . . .

"If, because of the direction to accumulate income during the life of the settlor, the trust agreement is held to be void as to such income accumulated as therein directed, no person could by a trust indenture do what he could do himself during his lifetime. *The act does not prohibit accumulations during the life of a settlor. On the contrary, the prohibition against accumulation commences to run and is in effect only after the death of the settlor.*" (Italics supplied.)

In Evans' Deed of Trust, supra, settlor was *not* the life tenant. Her children were. Settlor was alive at the time the case came before the court. There was a direction to accumulate income for the life of settlor. It was held this could be done without violating the statute against accumulations. The court stated at page 84:

"Under the act capitalization of income in this trust must end at the settlor's death, which event has not happened, so that all accumulations of income not already distributed under the discretionary power and authority given to the trustees in the deed and which may be hereafter received by them during the life of

Mrs. Evans will remain subject to their control and management, and be capitalized or distributed by them in their discretion for the benefit of settlor's daughter.

"There can be no more valid legal objection to Mrs. Evans' plan for increasing her bounty to her child than if she had directed accumulation for herself or had directed others to do it for her. This grant, with the direction to accumulate and capitalize income for the benefit of her daughter, could not create in the lifetime of Mrs. Evans the mischief which provoked the Thellusson act or the Pennsylvania act above quoted."

It is urged by life tenant's widow in the instant case that Carson's Appeal, 99 Pa. 325, is contra and that it rules the instant case. The same argument was made in Stackpole Trust, supra. Judge Hipple ably answered that contention. I adopt his reasoning, viz.:

"A careful reading of that opinion shows that the Supreme Court did not hold that a direction in a trust indenture to accumulate and capitalize income during the lifetime of the settlor was invalid. The facts therein were that in 1866 Matthew Baird, by a trust indenture, transferred securities to a trustee, inter alia, for his three daughters and with respect to their shares he provided that the income should be applied to their maintenance and education until they became 21 years or married, and that any portion of such income not so applied should be invested, that is, accumulated. He further provided that as the daughters married or became 21 years of age the trustee should 'pay the dividend, interest and income of one full equal third part of said three-sixths of said stocks, loans and securities, together with the accumulations of income, which shall have been invested, as the same shall be received', to the three daughters 'for and during all

the term of the natural lives of said daughters respectively', and at their death as they might appoint by will, otherwise to their children, etc. Matthew Baird died in May 1877, and one daughter, Ella, became 21 years of age on August 14, 1877. When she became 21 years old the accumulation of income on her share amounted to more than $100,000 and she petitioned the court to distribute such accumulation to her.

"The only question involved was whether the statutory provision against accumulations was violated by the requirement of the trust indenture that the surplus accumulations of income during minority be added to the original corpus and only the income on the whole paid to her after her majority or her marriage.

"Citing Washington's Estate, 75 Pa. 102, Stille's Estate, 4 W. N. C. 42, and McKee's Appeal, 96 Pa. 277, the Supreme Court held that the direction in the trust indenture that income accruing during minority and not used for the support, maintenance or education of the daughter should be capitalized at her majority and income on the whole paid to her for life, violated the Act of 1853, and therefore such accumulations were payable to the daughter at her majority. Subsequently, the Supreme Court was asked to modify its decree so as to preserve in the trust, undistributed, so much of the accumulations as had accrued during the settlor's own lifetime. This application was refused on the ground that 'this deed contains no direction for accumulation during the grantor's life. It vests the property in the trustee for use of certain persons, with directions for accumulation during their minority'. The effect of this decision, therefore, is not that income cannot be accumulated during the life of settlor but only that in this particular case the accumulations were invalid because there was no direction in the trust indenture to accumulate during the life of the

settlor, but on the contrary the direction was to accumulate during the minority of the beneficiaries. Consequently this decision rests not upon the prohibitions contained in the Act of 1853, but solely upon the phraseology used in the trust indenture, and the Supreme Court did not hold that a direction in a trust indenture to accumulate during the lifetime of a settlor was invalid, or prohibited by the Act of 1853."

Judge Trimble, the late distinguished and revered president judge of the Allegheny County Orphans' Court, in Evans' Deed of Trust, supra, pungently said:

"To use Carson's Appeal, supra, as authority here we must find an implied intention to accomplish an unexpressed purpose as the equivalent of one which is expressed, and by doing so deny to Mrs. Evans the privilege which is not prohibited by the Act. Such racking of language is unwarrantable.

"Under the Act capitalization of income in this trust must end at the *settlor's death*, which event has not happened, so that all accumulations of income not already distributed under the discretionary power and authority given to the trustees in the deed and which may be hereafter received by them *during the life of Mrs. Evans* will remain subject to their control and management, and be capitalized or distributed by them in their discretion for the benefit of settlor's daughter.

"There can be no more valid legal objection to Mrs. Evans' plan for increasing her bounty to her child than if she had directed accumulation for herself, or had directed others to do it for her. This grant, with the direction to accumulate and capitalize income for the benefit of her daughter, could not create *in the lifetime of Mrs. Evans* the mischief which provoked the Thellusson Act or the Pennsylvania Act above quoted." (Italics supplied.)

I conclude, therefore, that the accumulation of income during the lifetime of settlor does not violate the prohibitions in the statute of accumulations; a fortiori, power to treat extraordinary dividends and rights as principal does not violate the statute. The discretion vested in the trustees, permitting accumulation of stock dividends and rights to subscribe to stock, was the equivalent of adding to principal of the trust, which power settlor expressly reserved in the trust deed: Boenning's Deed of Trust, 55 D. & C. 485.

2. *Was the power exercised?*

It appears from the account which was filed and from the statements at the bar of the court that since the creation of this trust the trustees have never made any distribution of stock dividends. It appears that on several occasions Wharton Sinkler, cotrustee, stated he did not wish the stock dividends to be distributed. The cotrustees, and more recently the sole remaining trustee, have persistently held all stock dividends in the principal account of the trust.

Actions speak more loudly than words. The conduct of the trustee(s) in this case throughout the past 22 years has been that of treating the stock dividends as principal. I find as a fact that Wharton Sinkler and/or Provident Trust Company of Philadelphia, as trustees of this trust, have treated the stock dividend as principal.

It is noteworthy that during the 22 years of the existence of this trust Wharton Sinkler, Jr., life tenant, took no action to have any part of the stock dividends treated as income. It is apparent from his conduct that he believed that the trustees had treated the stock dividends as principal and that they had a right so to do. The conduct of the life tenants in the two companion trusts created on the same date (adjudications with regard to which are being filed contemporaneous herewith) was the same. Therefore, if

there are any equities to be considered in this matter they lie with the conclusions here reached.

The Act of May 25, 1939, P. L. 201, provides that in wills, deeds of trusts, or other instruments creating trusts, "becoming effective hereafter", provisions directing extraordinary dividends declared upon corporate stock held in trust, whether payable in cash, stock, rights to subscribe to stock of the issuing or another corporation, or otherwise, or directing that profits realized from such stock, either upon its sale or upon the sale or dissolution of the issuing corporation, or otherwise, shall be treated, in whole or in part, either as principal or income, "shall be valid and enforceable" and the Act of 1939 further repeals the Act of 1853 to the extent it is inconsistent with the Act of May 25, 1939.

The Principal and Income Act of 1947, section 5(1), which follows the so-called Massachusetts rule, declares (with the exception of where settlor legally directs otherwise) that extraordinary dividends and rights to subscribe to stock shall be deemed principal with respect to the shares of stock of the corporation itself which are held in the trust. It is, therefore, the clear legislative policy that such extraordinary dividends as involved in this case, which are all admittedly within the purview of the foregoing specific provisions, shall not be treated as an unlawful accumulation. In construing a doubtful case, the court can properly take into consideration the public policy, as expressed by the legislature, even though the particular statute may not retroactively apply: Vederman Estate, 2 Fid. Rep. 596.

In reaching the conclusions hereinabove set forth, I am limiting myself to holding that the trustees have treated the extraordinary dividends thus far declared as principal and that during the lifetime of settlor they have not violated the statute against accumula-

tions in so doing. Moreover, as for the instant case the donee has appointed in trust, in exercise of his power, inter alia, to benefit his wife as to a share of income, as he had a perfect right to do, and has committed the appointed trust estate to the sole remaining corporate trustee, with the same discretionary powers and duties granted by the donor in the original deed. Hence, the created trust is to be administered with such discretionary powers defined in the deed as are not inconsistent with the Principal and Income Act of 1947, or the Estates Act of 1947. As for the other trust estates under the deed of settlor for her other living children, I express no opinion as to what the future conduct of the trustee will be and what the powers of the trustee will be with regard to treatment of extraordinary dividends *after* the death of settlor.

The report of the guardian and trustee ad litem evidences a careful examination of the account as to items of charge and discharge. He finds no objections to any of such items of the account and thereby raises no questions with reference to its confirmation. He reserves the right to request the allowance of compensation to be payable from the principal of the trust, and has not presently suggested any amount or present allowance in view of the future services which may ensue, especially if there are exceptions to the adjudications as well as an ultimate appeal to the Supreme Court. The auditing judge will accordingly reserve for consideration and determination the amount of allowance of compensation to the guardian and trustee ad litem when such services are fully completed.

Wharton Sinkler, one of the trustees from May 13, 1932, to April 10, 1935, states that he received and examined a copy of the account as filed by the corporate trustee, and accepts such account for the period during which he was a trustee with the same force and

effect as if he had joined in the preparation and filing of the account.

By writing also hereto annexed, William L. E. Sinkler and George F. Tyler, Jr., executors of the will of Wharton Sinkler, Jr., deceased, waive detailed accounting by the Provident Trust Company of Philadelphia, remaining trustee, of income up to November 6, 1953, on which date the last income statement was rendered Wharton Sinkler, Jr., deceased life tenant, sole income beneficiary and donee of the power of appointment.

The remaining corporate trustee has asked for allowance of commission of $8,748.63, being three percent of $291,621.03, and also for allowance of charge for calculating apportionments of $300 (see appearance slip of counsel for accountant). The guardian and trustee ad litem has objected to the allowance of the commission on the grounds that the trust continues by virtue of the appointment in the will of the donee, that it would have continued under the donor's deed even in default of any appointment because the donee's children are minors, and that the corpus of the estate should not be depleted until the services of the trustee have fully come to an end. On the other hand, the accountant contends that a new trust arises by virtue of the appointment made by the donee in the exercise of his power, that the donee might well have selected different trustees and the fact that he committed the trust by his appointment to the same trustee for administration should not be a reason to deny the accountant the right to receive commissions on the corpus at this time. In Clermontel's Estate, 13 Phila. 235, it was held that where the same person acts as trustee under one will (the donor's) and afterward as executor under another (the donee's), though dealing with the same fund, he may receive a commission for his services in each capacity. The facts of that case are

not similar to those in the instant case but there is an analogy in this aspect and with reference to what the court there said:

"The point would not have been taken if the testatrix had intrusted the settlement of her estate to any other person than the accountant. Why should the accidental circumstance that he had already occupied towards her the place of a trustee, preclude him from claiming the compensation which would unquestionably have been awarded to an executor who was a stranger to the former trust?"

See also Estate of William F. Allen, no. 3633 of 1940, adjudication of Ladner, J., dated March 29, 1941, and Estate of Elizabeth McCorkell, no. 3496 of 1940, adjudication of Ladner, J., filed January 3, 1941.

The auditing judge is not unmindful of the general rule that a trustee is not entitled to commissions on the principal of an estate before the termination of the trust or at least before his own relation to the trust has ceased (Bosler's Est., 161 Pa. 457, and Snyder's Est., 346 Pa. 615), but is of opinion that the instant case comes within the exception and is one of unusual circumstances, for though the fund technically continues to be held in the donor's estate, it is the subject, by virtue of the appointment made by the donee, of the trust as appointed by the will of the donee. Accordingly, compensation is allowed the sole remaining trustee on the principal, as aforesaid, at the rate of two percent, in lieu of the three percent claimed, and this without prejudice to the accountant to seek such further allowance of compensation as it deems proper and appropriate on the termination of the trust as appointed and declared by the will of the donee of the power. . . . .

. Leave is given to make any and all necessary assignments and transfers.

A certificate of the official examiner as to his examination of the assets awarded in trust will be submitted to the auditing judge in accordance with rule 9.

And now, to wit, December 22, 1954, the account is confirmed nisi.

*Homer H. Hewitt, Jr.,* of *MacCoy, Evans & Lewis,* for accountant.

*William S. Rawls,* for executors of Estate of Wharton Sinkler, Jr.

*Samuel S. Logan, Jr.,* for Joan Altin Sinkler, residuary legatee.

*Morton Witkin,* guardian ad litem for minor remaindermen and trustee ad litem for all unascertained remaindermen.

### SUPPLEMENTAL ADJUDICATION

LEFEVER, J., April 22, 1955.—Exceptions were filed to my adjudication, dated December 22, 1954. The court en banc heard argument thereon. Under date of March 21, 1955, the court, with my approval, entered a decree dismissing the exceptions pro forma and recommitting the record to me for such further consideration as I might deem necessary in the premises.

The conclusion reached in my adjudication is buttressed by the language of the Supreme Court in Leisenring's Estate, 237 Pa. 60, 66:

"Should the construction of the will carry the accumulation beyond the statutory period within which accumulations are permissible, the law will stop the accumulations at this point, and thenceforth give the income to the next of kin. It will not declare the gift void because of such transgression, but will avoid so much of it as does transgress the restrictions of the Act of 1853: Brown v. Williamson, 36 Pa. 338; Conrow's App., 3 Penny. 356. It was therefore error to hold that the gift in this instance was void because of the Act of 1853 forbidding accumulations, no matter

what the purpose of the testatrix was in this respect; an error which resulted from failure to distinguish between the rule governing perpetuities and the rule governing accumulations. 'A limitation which transgresses the rule against perpetuities is void altogether, differing in this respect from a provision for accumulation contrary to the statute, which is void only for the excess': Hillyard v. Miller, 10 Pa. 326; Brown v. Williamson, supra; Rhodes' Est. 147 Pa. 227.", and by the statement of Judge Hunter in volume 1 of his Commonplace Book, page 8, sec. 11, that "Limitation which transgresses the rule against perpetuities is void altogether, differing from a provision for accumulation contrary to the statute which is void only for the excess: Brown v. Williamson, 36 Pa. 338; Rhodes's Est., 147 Pa. 227; Lennig's Est., 154 Pa. 209; and Leisenring's Est., 237 Pa. 60." And in the April 1955 issue of the Fiduciary Reporter appears Rhodes Estate, 5 Fid. Rep. 189, wherein the Orphans' Court of Allegheny County holds that "the accumulation of the income from an *inter vivos* trust during the lifetime of the donor is not in violation of the Act of 1853 . . .".

Therefore, I would reaffirm my prior adjudication. However, the parties have now filed a stipulation settling the case.

"Family agreements or settlements are always favored in the law and when fair are valid and will be upheld whenever possible: Edelman's Estate, 336 Pa. 4, 10, 6 A. 2d 511; Iacovino v. Caterino, 332 Pa. 556, 2A. 2d 828; Braunschweiger's Estate, 322 Pa. 394, 185 A. 753. . . .": Fry v. Stetson, 370 Pa. 132, 135.

Accordingly, the family settlement agreement is approved and the awards as made in my original adjudication are modified to the extent necessary to conform to that agreement.

Accountants will submit a schedule of distribution, in duplicate, certified by counsel to be correct and in

conformity with the adjudication and supplemental adjudication, which schedule, when and if approved by the auditing judge, will be annexed hereto and form part hereof.

And now, to wit, April 22, 1955, the account and the adjudication thereon, as modified by this supplemental adjudication, are reconfirmed.